May it please the court, my name is Dave Paradis and I represent defendant Reggie Boltz. In our supplemental brief we've acknowledged that the federal court had jurisdiction over the tort claims of fraud and undue influence based upon the Supreme Court's ruling in Marshall. The district court found in favor of Reggie Boltz on those claims. That finding has not been appealed until its final in the court. You determined that the federal court had jurisdiction over those claims. The question then becomes did the district court have jurisdiction over the declaratory judgment action? That claim required Judge Burns to interpret the California Trust. The Ninth Circuit has precedent in Marshall that's still good law, that that is a purely probate function. I'm not sure I agree with you. Our concern in Marshall decision was not to interfere with or effectively overturn a Texas probate decision, but here there's no state probate decision that we would interfere with or effectively overturn. I can't see where you get, and after the Supreme Court reversed in Marshall, I can't see how you'd get any probate exception for this case at all. Well, let me explain. The interpretation of the trust has a significant effect on the probate case because it essentially ruled on the validity of every... Effect, but how does that bring in the probate exception? Because it ruled on the validity of every transfer Frank made out of the trust after he moved to Oregon. And then... How many transfers was that? Well, the allegations in the complaint says that Frank and Lily transferred all of their assets into the California Trust and that when Frank died, well except for a vacation home, but when Frank died there were no assets left except one, the Note and Deed of Trust relating to this building. But, but in this case, if Frank Chirko sold the property, the Bolses, how is the property in the custody of the probate court? That property, that real estate in California, is not technically in the custody of the probate court. Isn't that what this case is about? No, it's about all the other property. How, how is that so? Because the court ruled, and this ruling is entitled to full faith and credit, that Frank needed a doctor's certificate, two doctor's certificates, before he could transfer anything out of the trust. During times he believed Lily was incompetent, so if he took a wedding ring of Lily's or a piece of jewelry of Lily's and gave it to him during Lily's life, that's an asset the Oregon probate court currently has jurisdiction over because it's not in the California Trust. And this interpretation says, hey, because there were not two doctor's certificates, Oregon probate court, you need to send that to the California Trust. I still don't see the probate exception. The basic idea of an inter vivos trust is to avoid probate. That's why people do them. That's correct. They convey property to the inter vivos trust, and the trust doesn't die. So, nobody probates, will, or administers the estate that's in the trust. The race never goes into probate court, and that's the way it looks. Even if there is an incidental effect on what the probate court decides. Okay, but I think it's more than an incidental effect because of the doctrine of issue preclusion. Judge Burns has now interpreted the dispositive. I still don't see where that puts it in the probate exception. Okay, well, let me give you another example. The plaintiffs allege that Frank Cherko in 1998, when they moved to Reggie Bolts for his business, built some duplexes. Those were transferred to Frank Cherko, and the complaint in the Oregon case says, and are either in his estate or in his Oregon trust. Now, based on the ruling of the California court, the federal court, the Oregon court has to say, well, because the California court has ruled that the plural can't mean the singular, and that shall means may, and that may mean shall, and that or means and, and you need two doctor's certificates, that original loan was not a valid transfer from the California trust. What's the matter with that? I've never read that the probate exception applies to bar issue preclusion or other forms of race judicata from decisions unrelated to, or decisions that do not either administer a decedent's estate or probate as well. Well, it's our contention that that decision has the effect of administering the decedent's estate in Oregon because it has the effect of invalidating Frank's attempts to transfer assets to his Oregon trust or through his will, and that's what, that is an effect on the probate, and I think it goes further and actually affects the res that's within the jurisdiction of the probate court, not the California building, but all the other property that they claim was in this trust and asked both the federal and state court to trace and return back to the trust. And I think Judge Berg recognized the problem and tried to mitigate it by just focusing on one transaction. Let's limit this to one transaction. And he left the rest to the probate court. Yes, but the effect of his rulings are to invalidate these transfers Frank tried to make through his trust and through his will, which are subject to the jurisdiction of the probate court. It made the decision for the probate court as to how we're going to dispose of the assets in Frank's will, his estate, and his trust. It made that decision, and it's now told the probate court what to do, and that's a perfect example of what the probate exception is all about. I don't think so. I think the word and, in that sentence you just used, throws me off. You said his probate estate and the trust. The trust is not part of his probate estate. If the property is in the trust, it doesn't go through probate. If he owns it personally, then it goes through probate and gets administered as part of his estate. Now, the fact that within the state system of one or another state, the legislature keeps the probate judges busy doing things other than admitting wills to probate and administering estates, assigns them other tasks, whether it's processing traffic tickets or interpreting trusts or you know, in a normal case, if we were dealing with one trust, I follow you, but this case is intertwined, and you're dealing with a California trust, an Oregon trust, and an Oregon will, and you're disposing of assets that were in Frank's estate, either his trust or his will, after he died. They're in the trust. They're not in Frank's estate. Well. They're in the trust's estate. The trust is a separate legal person. But when the Supreme Court said, we're not to interfere with the disposition of the decedent's estate, that's the word it used. It didn't use the probate estate. Yes, it said decedent's estate. The only dead person is Frank. And the trust isn't dead, so it can't be a decedent. And you said it was inexpressibly intertwined. Would you explain why you say that the property, which is not in the custody of the probate court, is affected by the sale? Again, it's not this property. I agree with you there. It's the disposition of the rest of the property. But the rest of the property is not in question here. And you say, well, they're so intertwined. I'm asking, how are they so intertwined? Because the way in which the court construed the California trust affects how the rest of the property is going to be disposed of by the Oregon probate court. In what way? The Oregon probate court is going to be asked to find that any attempts by Frank to transfer assets out of his California trust into his Oregon trust, or by his Oregon will, were invalid. Well, that may be asked, but that's not determined by this case. Well, because the only reason is the difference here is Oregon hasn't finished the lawsuit. In the Texas case, there were some rulings made. Oregon hasn't finished. That probate case is still pending. And so you have to look, I think, from a forward standpoint as to what effect this would have on the probate. But we have no assurance that that's going to happen, or that the probate court is going to so rule, do we? Isn't that sort of speculation? Well, no. You base it on the pleadings. You have to base it on the pleadings, what the pleadings, what kind of relief the pleadings are asking for in the federal court, and whether that relief is going to affect an ongoing probate proceeding. Let's see if I've got this right. Let's suppose you had a contractor court case, something totally unrelated to wills, trusts, decedents, totally individuals. One of them dies while the case is pending. And the way the case comes out, one of the findings of fact is that John Doe really isn't John Doe. John Doe is really Richard Rowe, who was living under the assumed identity. This affects the administration of an estate of the person who claimed he was John Doe and turned out to be Richard Rowe. You're claiming, as I understand it, that the court or civil case that had been pending while John Doe, Richard Rowe was alive, there's no federal jurisdiction because it has an effect through establishing, through issue preclusion, that John Doe is really Richard Rowe on a subsequent probate. Have I got the logic of your argument right? I'm not sure you do or not, but it's a pending probate. And if you look at the pleadings, the federal court and the state court were asked to do the exact same thing. Identify all the assets from the Churchill Trust, trace them, and put them back in the trust. Now, let me ask you something else about this, just to make sure I got the basic framework right. What the practical effect of a case is, is whether the descendant who was taking care of Frank during his last period before he died, whether it's spread among the whole family through the trust provision? The Oregon Trust, the California Trust, left the property to a son, daughter, grandson, and then a bunch of other grandsons. The Oregon Trust deletes the gifts to the son, daughter, grandson. So it was Frank's desire at that point. The Oregon Trust gives it all to the woman who was taking care of him at the end? No, it's the grandchildren under the original California Trust, but not the son and daughter and one other grandchild. Because when Frank moved to Oregon, he decided he wanted to, in essence, disinherit three people out of eight or nine. Let me ask you something else now. You said that that provision that said a trustee could be determined to be incompetent only on the agreement of both trustees didn't make any sense. And my thought, as I read that and stood on it, was no, it could make sense. Because if you're becoming incompetent, you're likely to have a period where you go in and out. And while you're during one of your lucid periods, you might well want to say, Frank, you take care of it. I can't do this anymore. And the other thing is, it didn't look to me like it mattered, because all Frank could do with the money anyway, if Lily was incompetent, is take care of Lily. Couldn't take care of his daughter or granddaughter with the money. Well, two things. First, trustees' plurals there is read singular, because an incompetent trustee cannot make that decision. Secondly, there was no dispute about whether Lily was incompetent. The plaintiff was alleging the same thing. So there was no reason to require these doctor's certificates. And it does say or. And so if you read it, the trust defines plural as can be read as singular. So you can effectuate the intent of the parties and make the thing make sense. I think you've now chosen not to answer the first of my questions. Which is? About somebody going in and out of incompetency and deciding during a lucid period to turn everything over to the co-trustee. Well, they could do that if they wanted. How could you deal with the second one then? Well, I think it went beyond that. You're right. Even if Lily was properly determined to be incompetent, all Frank could do with the trust assets is take care of Lily, not give them to the woman who took care of her. He could use principle to take care of Lily as he saw fit. But it also says the non-incapacitated settler, that's Frank, can withdraw assets from the trust. But what's his difference between a settler and a trustee? Settler's Frank. Yes, but you are arguing that as a trustee, he could not do that. We were arguing both. That as a trustee, he could sell the building if he felt it necessary to take care of Lily. But remember, Judge, there was no income coming in from that building. I'm sorry, but I read your argument that he couldn't do this as a trustee. And I wondered why you didn't argue that he couldn't do it as a settler. And as a trustee, as Clinefield said, all he could do was to sell it for her benefit, her education support and maintenance. Well, there was facts in the record that support that conclusion, that that's why he sold it. Are you saying that the second phrase for the settler's health, education, support, and maintenance means if Lily is incapacitated, Frank can take assets out of the estate for Frank's health, education, support, and maintenance, not just Lily's, because he's a settler? No, no. He can withdraw assets from the estate though if he deems it necessary. Judge, he about Article 4 now. I'm with you. And Article 4, the way I had understood it was, if Lily's incapacitated, and if you're right that Frank can decide all by himself that she's incapacitated and can take money out of the estate, that's two big ifs, but I'm assuming them both your way. I was thinking all he can use the assets for is Lily's health, education, support, and maintenance. And that's not what he did with the asset in question. Well, I guess I disagree with that factual finding you're making, that he didn't do that with this building. He took a non-income producing building, turned it into an asset that would produce income in the form of monthly interest payments that he could then use to care for Lily. He didn't know what was going to come in the future and what was going to be required. He'd already spent $80,000 on Jim's house. He didn't need a doctor for that to make, so Jim could buy a bigger house, him and Lily could move in, and he could have some help taking care of Lily. Nobody's questioning that. He's out $80,000, and he doesn't know how long it's going to last. Nobody needed a bigger house. I thought she was in one of those residential care facilities. Well, in California, when Lily's health was deteriorating, Frank and Lily moved out of their house in San Diego and moved in with this plaintiff, Jim Campion, in the Bay Area. I thought Frank moved in with this party and that Lily moved into a home. Lily didn't move into the home until the very end of their stay at Jim's, and then Frank got her out of the home because she never wanted to be there in the first place. I'd like to reserve for rebuttal. Can I ask one more question? Sure. Why don't the provisions of Article 9, which allow a single settler to sell a community property asset or separate property, control in this case? Well, I think it does, and I also think Article 9 doesn't prohibit the sale, Judge, and the general provisions of Article 9 also allow the sale, because Article 9 says that you can amend the trust, but I don't even think you have to go there. I don't think Article 11 prohibited the sale, because it says you may not sell the building, and that's a discretionary term, and there's no evidence he abused his discretion. And then the very next sentence in Article 11 says, but if it's there, it doesn't say but if it's there, but that's the way I read it, you shall charge rent of $500. So he says, you shall charge rent, you may not sell. There's a difference between what those words mean, and what happened here is the court found you needed a modification because this provision prohibited the sale, because he didn't read the trust. He relied on experts, which shows he was out of his element. Thank you. I'd like to reserve for rebuttal. Good morning, Your Honor. May I go ahead and take advantage of your offer and reserve 10 minutes? We have two lawyers speaking. Thank you. Would the Thank you, Your Honor. May it please the court, I'm Steele Gillespie, and I will be addressing defendant's first issue on appeal, namely defendant's misapplication of probate exception to federal court jurisdiction in the instant case. Again, I would note diversity jurisdiction itself is not challenged here. As held by Justice Ginsburg and the United Court, contra to defendant's assertion, the probate exception is, as the court is recognizing, extremely limited and of application. The standard is not whether an issue could be handled by a probate court, for that was expressly found to be too broad an application under the martial court. The martial court confirmed that the standard is you have to have interference with an actual probate court administration, or you have to have interference with property in the custody of a probate court. Justice Ginsburg, citing the historic precedence of Waterman, Markham, clarified and defined interference, quoting, the probate exception reserves the state probate courts the probate or annulment of a will and the administration of a disposing of property that is in the custody of a state probate court, but it otherwise does not bar federal courts from adjudicating matters outside those confines and within federal court jurisdiction. Defendant's misconstrual of the probate exception under martial and its antecedents is also established by the facts and law of that. The San Diego property, as this court has just in California, it is real property. The San Diego property was not in the custody of a California probate court. Defendant further, unfortunately, mistakes the facts or law in an incorrect attempt to apply the exception or to fashion the exception. Defendant, unfortunately, asserts, and incorrectly, that the Oregon probate court was somehow involved in the administration or custody of the San Diego property. That, unfortunately, is a clear misstatement of the actual facts. The Oregon probate court, on two occasions, expressly ruled that the San Diego property was not in the custody of and was not part of the administration of the Oregon probate court. I respectfully referred the court to the red brief appendices one through six, which are the rulings of the Oregon probate court, which rulings were made one year prior to the trial in the Southern District Court. Defendant further misapplies the California probate code 17,000 in the instance of our case. 17,000B expressly provides for concurrent jurisdictions in such cases as is before us, which is an action against the third party to undo a real property transfer based on an invalid deed, which deed and transfer, as Your Honor recognized, was based, was done during Frank and Lily Churko's lifetime. My learned friend keeps avoiding discussion of Lily Churko, the other trustee, and the other seplor involved in this case. And I underscore the fact that this was a lifetime transfer. Both Lily and Frank were alive at the time of the challenge transfer. Defendant, of course, does not con- With the, just to make sure I've got my understanding right, the idea of your case is that the trust sold the property cheap and basically gave a goodbye to the relative who took care of Frank in his old age at the expense of the rest of the family. In essence, in the complaint, yes, Your Honor, we said that, you know, having a 91-year-old and a 93-year-old execute a deed which purports to give a very valuable piece of property in the gas lamp of San Diego on a 10-year balloon payment, yeah. I don't need the whole argument. I just want to know if I got the picture of the case right. That was one of the arguments made, yes, Your Honor, for the claim for probate exception other than it proves that the exception is not there. No, we're not talking probate exception anymore with that. Correct. And then the next piece I want to make sure I've got right is Lily didn't sign. Her signature was forged. Yes. And she was still alive, so the only She agreed that she was incompetent or was determined to be incompetent by two doctors. Is that right? That was one of the matters that was under there. Mr. Graham will be directly discussing that particular matter. We say that, in very brief, and I don't want to take Mr. Graham's thunder, that the very deed that was challenged had both names on there. Frank signed first, knew that Lily was going to be the next signature, and although he wasn't present, Lily did indeed was purported to have signed the deed. Of course, Judge Burns expressly found that that was not Lily's signature on the deed and expressly found the testimony of the notary, the deed, not credible. So getting back to the probate exception. Yes, sir. Your main focus. Yes, sir. If I understand this argument correctly, I'm asking you to educate me if I don't. The appellant is saying that the issue preclusive effect of the federal district court judgment on a subsequent probate invokes the probate exception. You're saying that it doesn't because the Supreme Court decision in Marshall makes the probate exception a lot clearer than it used to be and a lot narrower than some people thought it was, and it just doesn't extend to the issue preclusive effect of a civil suit that is not probated with decedent's will or estate. Tell me two things. Number one, do I understand this correctly? And number two, I realize Marshall's a brand new case. Have any circuit courts interpreted it one way or the other since Marshall came down? I was going to discuss that, Your Honor, because my friend cites three cases. I say he miscites the case. I think basically, in a nutshell, what I would say, and I believe an answer to your question, is that my friend is incorrect. The San Diego issues were not part of a probate. Oregon said the San Diego issues were not the San Diego property was not part of the Oregon administration nor was it in the custody of the court. Ergo, everything that Oregon is doing is separate. In point of fact, Judge Burns was very careful. He took almost a surgical precision to the issues in this case. My learned friend failed to inform the court that what was said in the complaint went through two trial court judges, and Judge Burns ultimately said, hey, look, I'm going to be very careful in this matter, and he only kept the issue of the San Diego property. Mr. Paradis himself was present in the courtroom when it was agreed that even if there was a scintilla of something that might involve the Oregon court, that Judge Burns deferred it to the Oregon court. The only thing that was decided by Judge Burns, as he himself said, was the issue of an invalid transfer inter vivos of the San Diego property. It does not affect the Oregon court. Well, it is. I lose my focus when you talk about how your adversary is making incorrect representations about this or that. Just talk to me so I can understand what you're saying. Yes, sir. In other words, there is going to be issue preclusion because the civil case will determine that some other property could not properly be conveyed by Frank, or at least in all likelihood there will be issue preclusion. Assuming that there is issue preclusion in the Oregon probate on account of the federal district court case, does that invoke the probate exception? I would argue no, it doesn't, Your Honor, because even under 17,000B, there's concurrent jurisdiction. Secondly, the fact remains that the Oregon probate court will be making the dispositions under the separate estate plan in Oregon. The California matter was, again, a separate issue. As to issue preclusion with respect to how Frank did it, again, the matter was done while Lillie was alive, when Frank was making the transfers, while Frank and Lillie were making the transfers, because, as the record reflects, Frank and Lillie signed general powers of attorney in the Oregon action to permit defendants to move monies around. So I don't believe an issue preclusion, per se, would arise in the Oregon action sufficient to invoke the probate exception. Thank you, counsel. If I might very quickly, Your Honor, have your, you're over your time. Oh, sorry, Your Honor. Thank you. Unless my colleagues have more questions for you. Good morning. May it please the court, I'm Robert Graham. I'm going to address the issue whether Frank Chirko had authority to transfer to San Diego property alone as trustee of the Chirko Trust. I want to emphasize several points in the record. First, the district court invalidated the March 1999 deed on two grounds. One, that the signature on the deed purporting to be that of Lillie Chirko was found to be found by the court as not being hers. That has never been challenged on appeal. Second, the transfer of the San Diego property was in violation of an express term of the trust, restricting the transfer of the San Diego property. And I refer you to ER 96. Second, the Chirko Trust agreement at ER 166 restricted when the San Diego property could be sold. The court found that for purposes of the receipt. Excuse me for interrupting, counsel. Yes. And I'm going to ask you a question you may not want to answer, but could Frank have sold the property as a set, Lord? Singularly? Under Article 9. No. And why not? Because of the restriction on the, in the trust, that it could not be sold. That would require an amendment to the trust. The amendment to the trust would require two signatures. His remedy, and which the is cited by, by the appellant, is that you go to court under probate code 15, I believe it's 15409. And there, because of the change of circumstances, you seek to remove that amendment. Now, under his powers of trustee, if that restriction was not in place, he would be able to have sold the property, irrespective of, of Article 9. But because of that, that restriction, he had, that had to be, could only be removed by two ways. An amendment that both of them signed, or by a, a matter before the probate court. You're talking about the Article 11 restriction? Yes. Yes. Your, your reading of Article 9 is that the power that the settlers have to amend the terms and to dispose of the property is limited, and that the, that the Fifth Avenue property is, is an exception. So could, could they have sold it? Could Frank have used this for the, for the support of Lilly? He could go to court to say there's been a change of circumstances. And that's the Article. I can't. That's his Article 4 power. Yes. That, that is, I can't get Lilly's signature on amendments. Court, I want instructions allowing me to sell the property because I, I need it for Lilly's health, education, and care. Was the Fifth Avenue property a community property? Yes, it was. Now, under Article 9a.1, for community property, a written instrument signed by either settlor appeared to, appears to allow the trust to be revoked in whole or in part. But the trust wasn't revoked. That's the point. Remember, the trans, the, by revoking the transaction, you're, you're, you are giving up a portion of the trust. The point here is that this restriction in place required them to affirmatively seek relief from it. The community assets in this case would have, you would have to go to the remedy of, of 15-4, 15-409. I would like to pick up with, with the, the point about this provision related to that. Counsel, I'm not a California lawyer, so this may be a really ignorant question. Suppose Frank had revoked the trust in part with respect to the San Diego barbershop property. Would that mean a half interest in the whole would now be Frank's, and a half interest in the whole would now be owned by the trust? Yes. I would like to go to the issue of the contention that, well, going back to my argument, that this was a very simple situation. The, and, and the confusion arises by, by the mixing of the roles. You have the role of trustee, which Lillie and Frank had, and you have the role of settlers. And there's been this confusion. It's very simple. As trustees, they were limited as to what they could do by the restrictions that they'd imposed as settlers. Had Lillie signed that deed, and that, that that was her signature, that would have constituted a change, an amendment to the, to the trust. That would have been that here. We only have one signature here. The idea that this restriction, the, the argument advanced by counsel that this restriction only applies the year, or for a year after the death of the surviving spouse, I think is totally logical. I submit it's totally logical. It's not, it, it's, it's reading into a, a meaning that is inconsistent and not reasonable in light of the plain reading of the, of the language. The, the important part is that the intent of the Churchos, when they put the restriction in place, was that they were providing their son, Frank Jr. with the building to operate his business out of. If there was a specific finding by the court as to that issue, I would like to point that out at ER 93, paragraph 16, ER 95, paragraph 41. The argument that it would only apply for the year after would totally contravene the intent with which they established the restriction. Likewise, the idea that, that you could only sell the property, that, that, that the may, quote, may not restriction was only, not mandatory, but only really non-mandatory, that also would destroy the intent to which the, the party, the, the Churchos put the restriction in place. I would like to draw the court's attention also to the argument made that you have to give great attention or, or, or the intent of the, of the trustor as far as interpreting the terms of, of the proposed transfer. He cites the Garnier v. Superior Court for the proposition that the court allowed the Frank Churcho signature on March, on the March 1999 deed to act as an amendment to the trust, even though Lily Churcho did not sign the deed. The Fennec intends that the intent of the settler should be considered in that instance. First, that argument ignores Lily's, Churcho's intent, what her intent was at the time. We don't know what her intent was at the time. The court found her to be of unsound mind in March of, of 1999. I refer you to ER 93, paragraph 22. It also ignores Lily Churcho's express intent at the time she signed the trust agreement in 1997. That is, this property won't be sold until one year after the death of this settler, surviving settler. The express intent was that Frank Churcho could use the San Diego property. Finally, as contrary to this authority cited in the Garnier, Garnier-Gardenhire case, I refer you to Rosenmauer v. Title Insurance, 30 Cal. App. 3rd, 300, and the estate of Lindstrom, 119 Cal. App. 3rd. Both cases involved trust settlers attempting to revoke their revocable trust by subsequent wills. In each case, the court refused to allow the amendments. In each case, the court held that the attempted revocation was invalid because the terms of the trust were not followed, even though the settler's intent was to revoke the trust agreement. In conclusion, the defendant has failed to    address the theory that allows the removal of the restriction on the sale of property by any other means other than, one, getting Lily Churcho's signature, or two, going to the court and ask for the remedy of setting aside the restriction. I guess I read that restriction in Article 11. I mean, Lily knows there's some tension between her son and his dad, and she's saying... Over my dead body. Yeah. She's protecting her son, though. That's the gist of it, Your Honor. Tension between father and son is a pretty old story. Old story. I submit, Your Honor. Thank you, Counsel. The only problem is there's no evidence or findings to support that. They're the words there in Article 11. And may as a discretion... It means the trustees have discretion to keep that in the family until one year after death, as long as Frank shall pay $500 a month. There was discretion, and there's no evidence that Frank abused that. But may is defined in the trust as permissive. I don't know how you get permissive when it's followed by the word not, though. Well, you have that all the time in contract cases where the judges want to interpret may as shall, but you have to go with the ordinary meaning of the word. So you say the ordinary meaning of the sentence, you may not do something, is you may do it. You may not get ice cream. You may get ice cream. I'd like it if you didn't, but you don't have to. It was a hope. It wasn't a command. It was a hope. And the only evidence... She means, I hope you don't, but if you want to, I won't stop you. You've got to trust the dad not to throw the kid out of the barber shop. Judy Floyd said she was fine with selling the building, and the court found Judy Floyd's testimony to be credible. Okay, so we have to go with your reading of may not to mean may or may not. And the Article 9, which allows the set Lord to amend with his own signature, and the lack of findings that he violated Lily's trust. There's no evidence to show that. The amendment requires a signature by both settlers. The question that I asked Mr. Graham was whether it could be revoked in whole or in part by a written instance signed by each settler because it was community property. It's a different provision. Well, again, you have to read it in context. If he believes Lily's incompetent and there's no dispute about it, there's no reason for the second set Lord to sign the amendment. The trust gives Frank that authority. Well, the incompetence provision relates to the trustees. That's Article 4. That's different from Article 9. But it also says the non-incapacitated set Lord can withdraw assets. That's in Article 4. And Article 4 also says you don't need a conservator. You don't need to go to court. And that's in essence what the court wanted here. It wanted a guardian or a conservator to make this decision on behalf of Lily. And Frank and Lily's intent was that the non-incapacitated one could make it on behalf of the other. And that's why it specifically says you don't have to go to court in Article 4 on the next page. Thank you. Thank you, Counsel.
judges: D.W. Nelson, Kleinfeld, Bybee